The opinion of the court was delivered by
Poché, J.
This is an action on an alleged contract with the City of New Orleans, through the Commissioner of Public Works, for the supply of shells delivered to, and used by, said officer, in repairing and filling certain streets of the city, in January, February, March and April, of the year 1888, which shells were furnished at the agreed price of one dollar per cart load.
On the allegation that at the proper time the City Council refused to pass the necessary financial ordinance directing the payment of his bill, which had been approved by the then Commissioner of Public Works, plaintiff sued out and obtained an injunction restraining the Council from making any appropriation which would hinder or prevent the payment of the sums due to him in accordance with the rank and preference which he claimed.
Judgment was rendered in favor of plaintiff for his demand in full, and for all the relief which he prayed for, excepting the interests which he claimed, and which were denied him.
The defence is a general denial, and under it the city makes the point that the Commissioner of Public Works was without the authority or power to bind the corporation in the contract sued on.
The point is well taken and it should have prevailed as a defence; hence the judgment appealed from must be reversed.
Under the provisions of the charter of the City of New Orleans the right of contracting in the name, and in behalf, of the corporation is vested exclusively in the City Council, whose official acts must be done and evidenced by means of ordinances or resolutions. And the power of the Council itself to enter into contracts for purchases in the name and for the use of the city is regulated by special privileges contained in the charter. The exercise of that power is so restricted and circumscribed that an ordinance is not of itself sufficient to legally affect the purchase of certain things.
Sec. 21 provides that: “All contracts for public works, or for materials or supplies ordered by the Council, shall be offered by the Comptroller in presence of the finance committee of said Council, *237 and given to the person making the lowest proposal therefor, who can furnish security satisfactory to the Council.”
It will be noticed that the management of contracts for the purposes enumerated is entrusted, with very limited powers, to the Comptroller, to whom is conferred the duty of the general superintendence of the fiscal affairs of the corporation, and that in reference to such contracts no power is vested in, and no duty entrusted to, any other executive officer of the corporation. Hence it follows that under a proper construction of that provision, the power is withheld from the Commissioner of Public Works, and from the other executive officers, to represent, or to act in behalf of the city in the matter of purchasing supplies or materials necessary to their respective departments.
But in addition to that reason other provisions of the charter can be invoked to conclusively show that the power or authority to enter into contracts for materials was not to be exercised by any executive officer independently of the Council. Sec. 24 of the charter provides as follows:
“ The Commissioner of Public Works shall have general charge and superintendence of all matters relating to water works, railroads, canals, levees, weights tod measures; the fire department, and manufacturers, streets, side-walks, pavements and wharves; the construction and repair of bridges and drainage and hygiene of the city, in so far as the same may be compatible with the laws and duties of the Board of Health, and shall be vested with and perform such other functions as may be prescribed by said Council.” * * *
Nothing in that language can even suggest a remote intention of vesting the Commissioner of Public Works with the power of contracting for materials for the city and of determining the price to be paid therefor or the quantity to be procured.
After lodging that identical power exclusively in the City Council and prescribing to the Comptroller the mode of assistance which he alone could render in the premises, the law maker could not consistently entrust the same authority to another and_different department or officer.
In order to leave no doubt as to the true meaning of the charter on this very important question, which, notwithstanding.its clearness, seems to have been misunderstood, the Legislature passed Act 135 of 1888, which provides that, “ Neither the Council of the City of *238 New Orleans, nor any committee thereof, nor any of the officers of said city shall have the power to bind the city by any contract for any public work, or for the purchase of any material or supplies for any of the departments of the city government, unless there shall have been previously passed a resolution authorizing the said contract or the said purchase, and unless the said contract for public work or for the furnishing of said material and supplies shall have been let by the Comptroller to the lowest bidder, as provided in Sec. 21 of the City Charter.”
A close analysis of the various provisions of the city charter, and a comparison of the sections therein contained with each other, can leave no doubt on an impartial mind that the spirit of the restriction announced in that statute pervades the entire charter. And the only legal effect of the enactment of a soecial statute was to condense the limitation already breath"-? in the charter, in clear, terse and unambiguous language.
Of course, the act itself, as an independent legislation, could not control the contract now under discussion, as it antedates the statute, but it is useful as a legislative construction of a previous enactment, and it also serves to meet and answer the argument made here as to the inconvenience which might result from our construction of the power of the Commissioner of Public Works in connection with the purchase of materials necessary to his department.
The law, as it stood previous to the existence of the power now conferred by the last act to that officer to make bills for supplies and materials not exceeding $50, in eases of emergency may have been very inconvenient in its effects, but it was the law, and courts have no other mission but to enforce it.
Having concluded that the commissioner had no power to bind the city in the contract now in suit, we have nothing left to do but to apply the effect so tersely described by Judge Dillon in his work on Municipal Corporations:
“ The general principle of law is settled beyond controversy, that the agents, officers, or even City Council, of a municipal corporation can not bind the corporation by any contract which is beyond the scope of its powers, or entirely foreign to the purposes of the corporation, or which (not being in terms authorized) is against public policy. This doctrine grows out of the nature of such institutions, and rests upon reasonable and solid grounds. The inhabitants are *239 the corporators, and the officers are but the public agents of the corporation. The duties and powers of the officers or public agents of the corporation are prescribed by statute or charter, which all persons not only may know, but are bound to know.” Sec. 457. Also Secs. 464, 733; see also 10 An. 11, Fox vs. Sloo.
It is therefore ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed; that the preliminary injunction herein-obtained, be dissolved;' that his demand be rejected and his action dismissed at his cost in both courts.